

FILED
SEP 23 2013
USDC WP SDNY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TPC IP HOLDER, INC. and DR. THOMAS P. CONNELLY,<br><br>Plaintiff,<br><br>vs.<br><br>DR. GERALD COHEN, DDS, GREENWICH COSMETIC DENTISTRY, IN HOUSE DENTAL STUDIO,<br><br>Defendants. | ECF CASE **13 CV 6692**<br><br>VERIFIED COMPLAINT<br><br>JUDGE SCHOFIELD |

Plaintiffs, TCP IP HOLDER, INC. ("TCP IP") and DR. THOMAS P. CONNELLY ("Connelly") (TCP IP and Connelly, shall be collectively hereinafter referred to as "Plaintiffs"), by and through their undersigned attorney, for their Verified Complaint against Defendants, DR. GERALD COHEN DDS ("Cohen"), GREENWICH COSMETIC DENTISTRY ("Greenwich Cosmetic") and IN HOUSE DENTAL STUDIO ("In House Studio") (Cohen, Greenwich Cosmetic and In House Studio hereinafter collectively referred to as "Defendants"), respectfully alleges as follows:

### NATURE OF ACTION

1. This lawsuit primarily relates to the unauthorized use and registration of the website and uniform resource locator, www.thomasconnellydds.com (the "Website"). Defendants used the Website as a vehicle to, *inter alia*, defame Connelly, damage his business reputation and infringe upon Connelly's name and likeness.

### JURISDICTION AND VENUE

2. This Court has federal question jurisdiction over the claims pursuant to 15 U.S.C. § 1125(d) and 17 U.S.C. §§ 504 & 505. This Court has supplemental jurisdiction over the New York

State law claim pursuant to 28 U.S.C. § 1367(a) because those claims are so closely related to the federal claims brought herein as to form part of the same case or controversy.

3. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

4. This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants transact business in the City and State of New York and have committed tortious acts both within and outside the City and State of New York causing injury in the City and State of New York.

### PARTIES

5. Plaintiff, TCP IP is a New York corporation with its principal place of business located at 245 Park Avenue, 39th Floor, New York, NY 10016.

6. Plaintiff, Connelly is a New York resident.

7. Upon information and belief, Defendant Cohen is a Connecticut resident.

8. Upon information and belief, Defendant Greenwich Cosmetic is a Connecticut corporation with its principal place of business located at 40 W. Elm Street, Greenwich, Connecticut 06830.

9. Upon information and belief, Defendant In House Studio is a Connecticut corporation with its principal place of business located at 40 W. Elm Street, Greenwich, Connecticut 06830.

10. Upon information and belief, Cohen is the sole owner of In House Studio and Greenwich Cosmetic.

### FACTS APPLICABLE TO ALL CAUSES OF ACTION

11. In March 2013, Connelly noticed that the Website bearing his name and likeness had been registered to a third party.

12. The identity of the Website's registrant had been concealed under a privacy product offered by a company called "Domains by Proxy, Inc." ("Domains by Proxy").

13. The Website contains false and libelous, defamatory statements regarding Connelly and his dental practice.

14. Specifically, the Website falsely asserts that Connelly: (i) is "The Manhattan Deadbeat Dentist"; (ii) is a "Serial Deadbeat Practicing on Manhattan's Upper East Side"; (iii) is a "Scam Artist"; (iii) has "Unpaid Accounts"; and (iv) is a "Rip Off Artist". The Website also solicits complaints against Connelly as follows: (i) "Have you been ripped off by Dr. Thomas Connelly DDS? Send a copy of your complaint to info@thomasconnellydds.com"; and (ii) "Class Action – Have you been ripped off by Dr. Thomas Connelly DDS? Don't be a Silent Victim. We want to hear from you. Send a (sic) your complaint to info@thomasconnellydds.com." Further, the Website warns visitors to "Watch your Wallet Folks" (collectively, the "Defamatory statements").

15. Besides the Website's home page containing the Defamatory Statements, there are no other links or pages on the Website. Therefore, the sole purpose of the Website and its registration is to infringe upon Connelly's name and likeness and harass and damage Connelly's business reputation.

16. Additionally, the Website contains images of Connelly which were brazenly stolen from Connelly's actual website and uniform resource locator at www.drconnelly.com ("Connelly's Website").

17. The Website was registered with Domains By Proxy to purposefully shield the identity of the registrant/owner of the Website.

18. In March 2013, counsel for Connelly transmitted a cease and desist letter to Domains by Proxy to demand that it reveal the identity of the Website's registrant.

19. Counsel for Connelly also filed notices pursuant to the Digital Millennium Copyright

Act ("DMCA") with Codero Hosting, the Website's hosting company ("Codero"). Upon receipt of this cease and desist letter, the Website was taken down.

20. However, in late June 2013, the Website resurfaced but was altered using photo-shopped images of Connelly from images stolen from the Connelly Website.

21. During this period, Connelly was actively raising capital for a company he owns a percentage of called "32 Oral Care, LLC" ("32 Oral Care").

22. Connelly secured a high net worth investor that was interested in investing in 32 Oral Care. The investment was set to close at a $12,000,000.00 valuation. In consideration of the capital infusion, the investor was to receive up to a fifty percent (50%) membership interest in 32 Oral Care.

23. During the due diligence process and prior to closing on this capital infusion, the investor discovered the Website, read its contents and cancelled the investment. The investor specifically stated, in writing, that he read the content of the Website and based upon what he had read on the Website, he would not close the transaction. To date, Connelly has not been able to obtain a substitute investor on behalf of 32 Oral Care and the company has been forced to use high interest rate financing. Additionally, Connelly has had to leverage his own personal assets in order to keep 32 Oral Care afloat.

24. In early September 2013, the Website resurfaced. Defendants are engaged in a scheme of changing hosting providers once the Website is taken down so as to continue to damage Plaintiffs.

### FIRST CAUSE OF ACTION FOR DEFAMATION PER SE OF BUSINESS REPUTATION AND TRADE LIBEL AS AGAINST COHEN

25. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

26.     Defendant Cohen has made false and Defamatory written Statements of and concerning Plaintiffs' professional character and reputation and has repeatedly published and/or broadcasted these statements in the State of New York, in this District, and throughout the United States to numerous third parties through the Website.

27.     Specifically, the Website falsely asserts that Connelly: (i) is "The Manhattan Deadbeat Dentist"; (ii) is a "Serial Deadbeat Practicing on Manhattan's Upper East Side"; (iii) is a "Scam Artist"; (iii) has "Unpaid Accounts"; and (iv) is a "Rip Off Artist". The Website also solicits complaints against Connelly as follows: (i) "Have you been ripped off by Dr. Thomas Connelly DDS? Send a copy of your complaint to info@thomasconnellydds.com; and (ii) Class Action – Have you been ripped off by Dr. Thomas Connelly DDS? Don't be a Silent Victim. We want to hear from you. Send a (sic) your complaint to info@thomasconnellydds.com." Further, the Website warns visitors to "Watch your Wallet Folks".

28.     Besides the home page containing the Defamatory Statements, there are no other links or pages on the Website. Therefore, the sole purpose of the Website's existence and registration is to infringe upon Connelly's name and likeness and harass and damage Connelly's business reputation.

29.     The Statements published on the Website together with the defamatory nature of such representations become clear when the public searches for the name Thomas P. Connelly and 32 Oral Care on the Internet and reads and construes such Statements and representations.

30.     Upon information and belief, visitors to the Website understand the Statements to be defamatory and understand that the Defamatory Statements were intended to refer specifically to Connelly.

31.     Cohen knew or should have known that the written statements about Connelly were false and had actual knowledge of their falsity at the time these statements were repeatedly published

without privilege, authorization or consent.

32. Cohen made these false and defamatory statements for the sole purpose of ruining Connelly's personal and professional reputation and character, to cause injury to Connelly within the dentistry industry.

33. Cohen's accusations of criminal behavior by Connelly are false and malicious.

34. Upon information and belief, Cohen's motive in making the Defamatory Statements was to injure Connelly in his business and to discredit and cause harm to Connelly.

35. Cohen's Defamatory Statements have lowered Cohen in the estimation of the community.

36. Cohen's false and defamatory statements have caused significant and irreparable harm to Connelly's business reputation and character, especially within the dentistry industry.

37. Further, Cohen's false and defamatory statements have caused significant and irreparable harm to Connelly because as a direct and proximate result of these false statements and representations, Connelly lost an opportunity to secure an investor for 32 Oral Care, a company in which he owns a percentage of, and as such, he has been forced to use high interest rate financing and to leverage his own personal assets in order to keep his investment in 32 Oral Care afloat.

38. Upon information and belief, Cohen's Defamatory Statements were motivated by ill-will, malice or another nefarious motive as evidenced by the intentional and bad faith registration of the Website.

39. The Defamatory Statements constitute defamation per se and trade libel.

40. As a result, Plaintiffs need not prove damages.

## SECOND CAUSE OF ACTION FOR CYBERSQUATTING UNDER THE LANHAM ACT AS AGAINST DEFENDANTS

41. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

42. Defendants have registered, trafficked in, and/or used the Website (as defined hereinabove) that is confusingly similar to, identical to, and/or dilutive of the Connelly's name and likeness.

43. Upon information and belief, Defendants did so with the bad faith intent to profit from the registration of the domain name located at www.thomasconnellydds.com (the "Infringing Domain Name").

44. In particular, Defendants have registered the Infringing Domain Name in a manner calculated to divert and deceive consumers seeking to view Connelly's Website and/or its content to the Infringing Domain Name.

45. Defendants' use of Connelly's name and likeness on or in connection with the Infringing Domain Name was done with notice and with full knowledge that such use was not authorized or licensed by Plaintiffs.

46. Defendants' aforesaid acts are in knowing and willful violation of Plaintiffs' rights under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

47. Plaintiffs have no adequate remedy at law and, if Defendants' activities are not enjoined, will continue to suffer irreparable harm and injury to their goodwill and reputation.

48. Based on the conduct and actions of Defendants, as described and set forth, *infra*, including the fact that the Website contains Connelly's name, profession and likeness, hosts Defamatory Statements about Connelly and given that there are no other links, content or pages on the Website, obviously the only reason why Defendants registered the Infringing Domain Name was

to infringe upon Connelly's name, likeness and trademark and harass and damage Connelly in bad faith.

49. The actions of Defendants constitute a violation of 15 U.S.C. §1126(d)(1).

50. As a direct and proximate result of such conduct, Plaintiffs have suffered, and will continue to suffer, monetary loss and irreparable injury to their business, reputation and goodwill.

51. Plaintiffs are entitled to injunctive relief to prevent Defendants' continued infringement and misuse of Connelly's name and likeness. Unless Defendants are enjoined from continuing their infringing conduct, Plaintiffs will continue to suffer harm for which there is no adequate remedy at law.

52. Plaintiffs are also entitled to monetary damages from the improper acts alleged herein, in amounts to be proven at trial.

53. Finally, Plaintiffs are entitled to the Infringing Domain Name.

## THIRD CAUSE OF ACTION FOR COPYRIGHT INFRINGEMENT IN VIOLATION OF 17 U.S.C. §§ 504 & 505) AGAINST DEFENDANTS

54. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

55. Plaintiffs, at all relevant times have been, the sole people and/or entities to control and administer in the United States the copyrights in and to Connelly's pictures and images (collectively, the "Infringed Copyrighted Images").

56. Defendants have never sought and Plaintiffs have never granted Defendants any license for the use of the Infringed Copyrighted Images.

57. Defendants have used, displayed and made available the Infringed Copyrights Images on the Website for use by third parties without any authorization, permission or consent by Plaintiffs.

58. To date, Defendants continue their unlicensed activities on the Website with regard to the Infringed Copyrighted images owned by Plaintiffs despite having been informed repeatedly and clearly by Plaintiffs to cease and desist.

59. In fact, once Plaintiffs are successful in convincing a hosting company or third party Internet service provider to remove the content and associated Infringed Copyrighted images from the Website, Defendants merely move the Website to another hosting company or Internet service provider.

60. Despite the fact that Defendants had and have no right to the Infringed Copyrighted Images, they have and are currently using, altering, changing and/or adapting some or all of the Infringed Copyrighted Images on the Website.

61. Accordingly, Defendants have infringed and are continuing to infringe upon Plaintiffs' exclusive right to control the copyrights in and to the Infringed Copyrighted Images.

62. Defendants have purported to authorize the infringement of the Infringed Copyrighted Images by third party visitors and users to the Website to commit an infringement upon Plaintiff's exclusive right to control the copyrights in and to the Infringed Copyrighted Images and/or have infringed upon plaintiffs' exclusive rights.

63. Defendants' unauthorized acts have occurred, are occurring and will continue to occur without Plaintiffs' permission, license, consent or authorization. Such acts therefore, have constituted, constitute presently, and will continue to constitute, a deliberate and willful infringement of Plaintiffs' exclusive right to control the copyrights to the Infringed Copyrighted Images.

64. As a direct and proximate result of Defendants' acts of copyright infringement, Plaintiffs are entitled to damages and Defendants profits pursuant to 17 U.S.C. §504(b), or alternatively to the maximum statutory damages in the amount of $150,000.00 with respect to each of the Infringed Copyrighted Images pursuant to 17 U.S.C. §504(c).

65. Plaintiffs are additionally entitled to their attorney's fees and full costs pursuant to 17 U.S.C. §505.

66. Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury that cannot be fully compensated or measured in money damages. Plaintiffs have no adequate remedy at law and, pursuant to 17 U.S.C. §502, are entitled to injunctive relief prohibiting Defendants from continuing to infringe upon Plaintiffs' copyrights in and to the Infringing Copyrighted Images.

### FOURTH CAUSE OF ACTION FOR VIOLATION OF NEW YORK CIVIL RIGHTS LAW § 51 AGAINST DEFENDANTS

67. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

68. Notwithstanding several cease and desist notifications, Defendants have continued to use Connelly's name and picture including, but not limited to, on the Website without Plaintiffs' written consent, within the state of New York, for the purpose of advertising or trade.

69. The use of Connelly's name and picture in violation of New York Civil Rights Law § 51 has been knowing and willful.

70. Plaintiffs have suffered reputational harm, confusion of sponsorship and affiliation, and damages thereby.

71. Plaintiffs are entitled to injunctive relief and damages pursuant to New York Civil Rights Law § 51.

72. By reason of Defendants' knowing and willful violations of New York Civil Rights Law § 51, Plaintiffs are also entitled to punitive damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs pray for judgment in their favor against Defendants, and each of them, as follows:

a. Issue a judgment temporarily, preliminarily, and permanently restraining, enjoining, and prohibiting Defendants, their agents, servants, employees, officers, successors and assigns, and all persons, firms and corporations acting in concert or participation with Defendants or on Defendants' behalf, from:

(i) using the domain name thomasconnellydds.com;

(ii) using the term "Connelly" to designate any platform, medium, and/or website that contains any information relating to the dentistry industry;

(iii) infringing, contributing to the infringement of Plaintiffs' copyrights in any manner, and from copying, selling, marketing, distributing, displaying, licensing, or otherwise exploiting infringing copies or reproductions of any of Plaintiffs' copyrighted material, including the Infringing Copyrighted Images (as defined herein), and that Defendants deliver to Plaintiffs all copies or other materials used in the making of infringing copies or reproductions;

b. That this Court require Defendants to assign its thomasconnellydds.com domain name and any other domain name that includes the term "Connelly" to Plaintiffs.

c. Award Plaintiffs damages in an amount to be determined but equal to treble the greater of Defendants' profits or Plaintiffs' actual damages, or in the alternative statutory damages, plus pre judgment and post judgment interest, costs and attorneys' fees, pursuant to Plaintiffs' claims for cybersquatting.

d. Award Plaintiffs' damages and Defendants' profits in an amount to be determined, or in the alternative, statutory damages under 17 U.S.C. § 504(c), and its costs and attorneys' fees pursuant to 17 U.S.C. § 505;

f. Grant Plaintiffs such other and further relief as this Court deems to be reasonable, necessary and just.

Dated: September 13, 2013
       New York, New York

                                          Respectfully Submitted,

                                          LAW OFFICES OF PETER J. GLANTZ

                                          Peter J. Glantz, Esq.
                                          *Attorney for Plaintiffs*
                                          777 Westchester Avenue, First Floor
                                          White Plains, NY 10604

## VERIFICATION TO COMPLAINT

I, Thomas P. Connelly, individually and as the sole owner/shareholder of TPC IP Holder, Inc. in the within action declare that I have reviewed the Complaint in the above-captioned matter and I authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

Dated: September 13, 2013

_____
Dr. Thomas P. Connelly, individually and on behalf of TPC IP Holder, Inc.